**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KENNETH JONES,**<br>**v.**<br>**NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK)** | **CIVIL ACTION**<br>**No. 24-5558** |

**Henry, J.** **September 30, 2026**

**MEMORANDUM**

Kenneth Jones was fired from his job as a foreman at Amtrak after he was heard saying that "all the white hats should be shot," or something to that effect, at a group safety meeting. "White hats" refers to supervisors, who wear white helmets. Jones sued, claiming that the firing was racially motivated in one count under 42 U.S.C. § 1981. Amtrak now brings a motion for summary judgment. Counsel for Jones filed a brief in opposition after the deadline, having moved in the interim twice for extensions of time. The Court granted one extension but did not rule on the latter. After Jones's late brief in opposition to the motion for summary judgment, Amtrak moved to strike the brief as untimely, and Jones filed an opposition thereto.

Before the Court is what to do with the late-filed briefing and then how to resolve the motion for summary judgment.

## I. Whether To Extend Briefing or To Strike Late Filed Briefing

The question of what briefing to consider for the motion for summary judgment comes prior to the question of whether to grant summary judgment, since it could determine the arguments or evidence to be considered. As recounted below, the deadlines in the present case were repeatedly postponed. The final motion to extend the deadline, upon which no ruling was made, is before the

Court. Although it was unopposed at the time, Amtrak moved two weeks later to strike the plaintiff's filing, which motion I consider alongside the plaintiff's motion and essentially in the place of an opposition thereto.

A. PROCEDURAL HISTORY

On March 5, 2025,[1] the Court issued a brief scheduling order that stated, "Motions for summary judgment and any other dispositive motions shall be filed by July 3, 2025. ECF 13. Responses to any motions for summary judgment shall be filed by August 4. *Id.* Reply briefs in support of summary judgment shall be filed by August 18." *Id*. On June 5, Jones moved for the first time, with the defendant's consent, to extend discovery and motions deadlines, postponing the motions and opposition deadlines to August 18 (a delay of 46 days) and September 8 (35 days), respectively. ECF 15. The next day, the Court issued the proposed order. ECF 16.

On July 18, Jones moved for a second time, now with the defendants, to extend discovery and motions deadlines, postponing the discovery deadline to September 19 and the motion and opposition deadlines to October 17 (a delay of 74 days) and October 31 (53 days), respectively. ECF 17. The motion cited outstanding depositions of Jones and six defense witnesses. *Id.* at 1. Although the filing was styled as a joint motion, it concluded, "Wherefore, Plaintiff, Kenneth Jones, respectfully requests that the Court grant this motion and modify the June 9 Scheduling Order as set forth herein." *Id.* at 2. On July 21, the Court so ordered. ECF 18. In the order, the Court added as a separate paragraph, "The parties are advised that no further extension will be granted except with a clear showing of good cause. *See* Fed. R. Civ. P. 16(b)(4)." *Id*. The cited rule

[1] For the sake of readability, all dates in this section refer to 2025 except where explicitly otherwise. The year is elided from dates inside quotations without further notation.

reads, "*Modifying a Schedule*. A schedule may be modified only for good cause and with the judge's consent."

On October 16, the parties jointly moved to postpone the motion and opposition deadline to November 17 (31 days) and December 2 (32 days), respectively. ECF 19. The motion cited scheduling conflicts and "the unanticipated unavailability of certain witnesses" whose depositions were needed. *Id.* On October 17, the Court so ordered, repeating the separate paragraph citing Rule 16(b)(4) and adding this footnote:

> In the relevant scheduling order (ECF 18), I advised that "no further extension will be granted except with a clear showing of good cause." The present motion indicates only that discovery remains outstanding (and will remain outstanding more than a month after the relevant deadline). This is an extremely slender showing of good cause, but I will accept it for now. My inquiry upon any further motion for extension, whether by consent or not, will be much more searching.

ECF 20 n.1.

On November 17, Amtrak timely filed its motion for summary judgment. ECF 21.

On December 1, Jones moved to extend the opposition briefing deadline from December 2 to December 4 (2 days). ECF 22. The motion cited only "Plaintiff's counsel's pretrial commitments in cases since November 17 and the intervening Thanksgiving holiday." *Id.* Later the same day, the Court issued the proposed order. ECF 23.

On December 4, Jones's counsel moved for one more short extension of the deadline, this time from December 4 to December 8 (4 days). ECF 24. "Despite Plaintiff's counsel's best efforts, he will not be able to complete and file" the opposition timely, the motion stated. *Id.* It continued,

> In the period between November 17 and the present, apart from the intervening Thanksgiving holiday on November 27 in addition to preparing a response to Defendant's Motion for Summary Judgment in this case, Plaintiff's counsel, a sole practitioner, also is and has been involved in preparing a response to a motion for summary judgment in [another matter in this Court] which was completed on December 3 and filed on December 4, and the Brief for the Appellant in [a matter at the Third Circuit], which is due December 5. . . . No further extensions will be requested.

*Id*.

The dockets for the other two cases cited show plaintiff's counsel was busy and behind: In the Third Circuit case, counsel had successfully moved to extend his briefing deadline from October 29 to November 26, and then again to December. After another extension for counsel's reply briefing, the Clerk of the Third Circuit later had to remind plaintiff's counsel three successive times of his obligation to submit hard copies. *See* Docket, *Turner v. Philadelphia FIGHT*, No. 25-2652 (3d Cir. Aug 28, 2025). In the other case in this Court, plaintiff's counsel requested and received similar extensions of his opposition to summary judgment deadline, resulting in a final deadline of December 1. *Dorley v. County of Chester*, No. 25-cv-0323, ECF 24 (E.D. Pa. Nov. 28, 2025). Counsel moved on the day of the deadline for a short extension, which Judge Marston denied for having failed to comply with her policies and procedures. *Id*. ECF 26. On December 3, Counsel moved again for a post-deadline extension to that same day, explaining that the request was unopposed and that his procedural errors were based on unintentional ignorance of the Judge's policies and procedures, attaching the completed brief. *Id.* ECF 27. On December 4, Judge Marston granted the extension with apparent reluctance. *Id*. ECF 28.

Returning to the instant case, on December 8, Jones filed an opposition to the motion for summary judgment. ECF 25. Amtrak thereafter moved for leave to file a reply, ECF 26, which was granted, ECF 27, and that brief was timely filed, ECF 29.

As to the motions by Jones to extend the timeline, no opposition was filed by Amtrak. But the motions indicate neither Amtrak's position on the motion nor any attempt to ascertain it. On December 18, in lieu of any contemporaneous opposition to the motions to strike, Amtrak filed a motion to strike the opposition briefing as untimely. ECF 28. The motion to strike provided unreported circuit authority and reported authority from this Court for the proposition that the Court

has the discretion to strike untimely briefing—including responses to motions for summary judgment. *Id*.

On January 2, 2026, plaintiff's counsel filed a timely opposition to striking, styled as a paragraph-by-paragraph answer and providing only minimal responsive argument. ECF 30. Counsel noted that he had relied on the Court's granting his penultimate motion to extend as evidence that the next motion would be granted too, and that leave for late filing would be effectively granted. *Id.* ¶ 11. He argued that the defendant would suffer no prejudice from the (final) short delay.

Plaintiff's counsel additionally included as exhibits four email exchanges, the first inclusion by either party of any substantial evidence. In Exhibit A, plaintiff's counsel is promptly coordinating with defense counsel over the summer to try to get depositions done on time, deferring to defense counsel's request for a slightly longer extension of 60 days. In Exhibit B, plaintiff's counsel requests on August 20 an update on six depositions due a month later. No response is indicated. In Exhibit C, eight days before the discovery deadline, plaintiff's counsel threatens a motion to compel if availability for outstanding deponents is not passed timely. Defense counsel asks for some time and requests availability for the plaintiff as well. Finally, in Exhibit D, plaintiff's counsel follows up on October 11 in hopes of scheduling the remaining depositions, including that of his client, later that month.

No briefing in reply to plaintiff's opposition was filed (nor did Amtrak move for leave to file it).

B. <u>DISCUSSION</u>

A little bit of (uncontested) evidence goes a long way. Before seeing the exhibits, the Court had before it only the progression of somewhat barren motions to assess what appeared to be an

inability by plaintiff's counsel to figure how much time was needed to prepare. Of course, it is easy to imagine that the four exhibits attached to plaintiff's counsel's brief could be unrepresentative and that a larger context would overwhelm them, but the defense has done nothing to indicate as much.

A little bit of evidence is also what the Court's previous scheduling orders demanded: When the Court warned counsel that further modifications to the scheduling order would require clear showings of good cause and that the inquiry would be more searching, counsel nevertheless provided very little in which to search.

With the benefit of this uncontradicted evidence, the Court is satisfied that plaintiff's counsel was trying to get this show on the road, at least during discovery, and that there was some good cause for extension. It further imagines that the scrape with nearly-denied extensions across two cases in early December will have left a strong impression, whereas the final extensions of two and four days will have caused no prejudice to his opponent. Finally, the Court notes that our Local Rule of Civil Procedure 7.1(c) permits granting a motion for failure to timely oppose it—but it specifically carves out an exception where the underlying motion is made for summary judgment.[2] That local rule is not logically equivalent to forbidding a grant of summary judgment for failure to timely oppose it, but it is close: Given the nonmovant's burden upon a motion for summary judgment, striking his response as tardy might amount to granting the motion against him.[3] With those considerations in mind, the Court will grant the extension and deny the motion to strike the filing.

---

[2] "In the absence of a timely response, the motion may be granted as uncontested except as provided under Federal Rule of Civil Procedure 56, or otherwise prohibited by law." Local Civ. R. 7.1(c).

[3] A court might instead strike the tardy submission but permit a second opportunity for response under some alternative remedy, perhaps a page limit or even the submission of nothing further than an answer to the proposed statement of uncontested facts.

## II. <u>Summary Judgment</u>

Amtrak moves for summary judgment, arguing that Jones can neither establish a *prima face* case under § 1981 nor, if he can so establish, establish pretext to defeat its proffered non-discriminatory reason for firing him.

### A. <u>SUMMARY OF THE FACTS</u>

The following facts or disputes were submitted and summarize the underlying evidence submitted with the motion and its opposition. Plaintiff Kenneth Jones was hired as a Trackman in the Engineering Department at Amtrak on February 20, 1998. He worked there in various positions until he was fired in December of 2022. In the year before he was fired, two controversies arose. The first involved a complaint Jones submitted in January 2022. Jones (with others) complained to human resources officials that his and others' job as a driver had been abolished, that his supervisors Ben Saffer and Paul Lavasseur had made inappropriate comments, and that workers who were junior to him were getting more overtime than him. Jones claimed that the decisions were made for discriminatory reasons against nonwhite employees like himself. Amtrak HR opened an investigation and within a couple of weeks interviewed Jones for the first time. The investigation included interviews with seven other witnesses. It concluded by May, 2022, finding that there had been no violation of Amtrak's Anti-Discrimination and Anti-Harassment policy. Although no violation had been found, the investigator recommended that Levasseur be reminded of his own duties as a supervisor under that policy.

Just weeks after the conclusion of the investigation, Jones was present at an apparently routine outdoor safety meeting with perhaps 75–100 attendees in Bear, Delaware, at which recent safety issues and injuries were discussed. During the meeting, Jones became outraged at the supervisors. Supervisors wear white helmets, so they are called "white hats." Amtrak later investigated the matter and located four witnesses (other than Jones himself) who Jones had said at the

meeting something very close to "All the white hats should be shot!" Jones disagrees, saying that he stated, "All the white hats should be *shocked*." As a foreman, Jones also wore a white helmet.

Three weeks later, Amtrak notified Jones of an investigation into his conduct in contemplation of firing him. A hearing officer named Delia Chaudhri conducted the ultimate hearing on the matter in November of 2022. Jones and Chaudhri had not interacted with each other before. Amtrak says both it and Jones were permitted to present evidence at the hearing. Jones claimed in deposition that he did not have an opportunity to fully present his case, although he admitted immediately afterward that he had "the opportunity to put on evidence or present [his] case." Deposition of Kenneth Jones 114–15 (ECF 21-2).[4] Chaudhri determined afterward that Amtrak had found by substantial evidence that Jones violated policies against violent language, and he was fired on December 8, 2022.

Jones was later rehired with full seniority but without backpay, after the Special Board of Adjustment, which reviews disciplinary actions from unionized Amtrak employees, concluded that although there was substantial evidence that Jones had said "shot," there was not substantial evidence to support the conclusion that Jones's statement was perceived as a threat.

The parties agree that Jones cannot prove that his complaints against Saffer in early 2022 were related to his termination later that year, and Jones admits that Chaudhri's finding itself was not retaliatory, but Jones nevertheless believes the firing was connected.

[4] The transcript of the hearing provided with Jones's opposition briefing indicates that his counsel complained at the start about Amtrak's indicating initially that it would call several witnesses that it ultimately did not bring in for testimony. Jones's counsel at the time complained that this meant he would lose the opportunity to cross examine those witnesses, but he did not attempt to call the witnesses himself.

B. LEGAL FRAMEWORK

Rule 56(a) permits summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists only if a reasonable jury could not return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986) (holding that the standard is met where "there can be but one reasonable conclusion as to the verdict"). The movant satisfies its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(c)(1)(B). The Court reviews the evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255, and cannot go so far as to "weigh the evidence" or "determine the truth of the matter," *id.* at 249, taking care to draw inferences in favor of the nonmovant. As the Third Circuit summarized in *Marzano v. Computer Science Corp.*,

> Employment discrimination cases center around a single question: why did the employer take an adverse employment action against plaintiff? Because this is clearly a factual question, summary judgment is in fact rarely appropriate in this type of case. Simply by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.

91 F.3d 497, 509 (3d Cir. 1996) (cleaned up).

C. DISCUSSION

The question in this case, at least at this level, is not whether Jones stated that "all white hats should be shot" as opposed to "should be *shocked*." Four witnesses claim to have heard him say that, whereas Jones denies it, but it is neither the center of deciding this motion nor would it be dispositive at trial. The question for now is whether there is a genuine issue as to a material fact regarding Jones's firing, Rule 56(a), *i.e.*, whether there is a genuine issue as to *Amtrak's discriminatory intent* in firing Jones.

Jones has only circumstantial evidence of what he claims was discriminatory treatment and retaliation: At the time he was fired, he had been part of a group that complained against what it saw as racially discriminatory treatment by supervisors, and he claims that the reason given for his firing was sham. Although the precise nature of that discriminatory treatment is hard to understand in its entirety due to a lot of specialized jobs and union rules that are frankly a little hard to follow,[5] the modification to work arrangements that began Jones's internal discrimination complaint at Amtrak struck even one of his own supervisors as suspicious. Interoffice Memorandum of May 25, 2022 at 10 (ECF 21-2 at 283) (quoting Paul Levasseur as saying that "when I found out that the four of them had bumped into the gang, [] it seemed awfully funny that within hours of bumping into the gang they were put on nights" and as having identified Saffer's previous comments as sounding threatening).[6] Very shortly after the investigation into that treatment concluded, the safety meeting at Bear occurred. There is strong evidence that Jones said, "All the white hats should be shot," and there is agreement that his statement is the kind that would be impermissible under Amtrak's rules. There is also reasonable evidence to demonstrate that the hearing officer considering Jones's dismissal had no connection to Jones's prior complaint against his supervisors at the time he concluded that Jones should be fired.

This is where the first issues arise: Amtrak characterizes Jones as asserting his belief that the second investigation was tainted by the first and that the witnesses' reactions were false or feigned as a coordinated pretext to go after him. Amtrak and Jones agree that Jones and the hearing

---

[5] In reading through the submitted evidence, the Court had trouble understanding some of the jargon and organization and general workload of the employees and units involved. That alone might be the basis for a denial of summary judgment, since it is simply hard to gauge the nature of Jones's supervisors' decisions without clearer context.

[6] No deposition of Levasseur was submitted with the briefing, but the parties have not indicated a reason why he would be unavailable to give evidence.

officer Chaudhri did not know each other before the investigation, but Amtrak provides no further support for the nature of Chaudhri's independence.[7] Chaudhri's decision, it should be said, was issued on Amtrak letterhead. Decision letter 1 (ECF 21-2 at 378, Jones005). Amtrak is not due any inference that Chaudhri's decision was reached independently, *i.e.*, that it was not motivated by the alleged animus and retaliatory intent of Jones's supervisors. Its argument that "the record forecloses any finding of causation" because the investigation was not conducted until many months later and involved different people overstates the evidence, at least at this level. The dismissal investigation hearing occurred in November, but it was *begun* in early May, very shortly after Jones's own discrimination investigation concluded, and the independence of Amtrak's investigators from the influence of its supervisors, while very plausible, is no proven fact.

Amtrak has not directly argued about how to discern its intent at firing, *i.e.*, who did the firing and therefore exercised the intent at issue, but it implicitly rests the decision on the shoulders of hearing officer Chaudhri. Def's Mem. in Support 9 (ECF 21-1) ("Based on Ms. Chaudhri's findings, Amtrak terminated Plaintiff's employment . . ."); *id.* ("Most critically, there is no evidence that the independent hearing officer and final decision-maker, Delia Chaudhri, knew of Plaintiff's complaint."). Other than stating that Chaudhri had not met Jones, Amtrak does nothing to establish Chaudhri's independence from the preceding investigation, providing no affidavit or other records that might prove it. There is no indication that Chaudhri did any additional investigation. Since Amtrak asserts Chaudhri's independence to insulate its firing decision from Jones's prior complaints, its failure to even attempt to establish that asserted independence is concerning.

[7] Amtrak argues that the parties agree that the investigation was conducted by a "neutral" hearing officer, but it cites only the admitted facts that the hearing was presided over by Chaudhri and that Jones and Chaudhri had not met. Reply Br. in Support 3 (ECF 29) (citing Def's Proposed Statement of Unopposed Facts ¶¶ 37–38 (ECF 21-3)).

Yet, Jones *admitted* the proposed fact that "Ms. Chaudhri did not retaliate against him in finding that the charges against him were proven." Proposed Statement of Undisputed Facts ¶ 56 (ECF 21-3); Plaintiff's Answer to Def's Motion ¶ 56 (ECF 25). Amtrak's citation for that fact is Jones's deposition, in which he answered the question "Do you believe that this hearing officer retaliated against you in finding that the charges were proven?" with "I do not." Deposition of Kenneth Jones 133 (ECF 21-2). And, returning to the complaint in this case, Jones's theory of retaliation is in two pieces, neither of which directly implicates Chaudhri: First, supervisors' collection of witness statements, and second, the denial of the *appeal* of Chaudhri's firing decision by a senior manager in March of 2023. Compl. ¶¶ 12, 22. In other words, Amtrak through its briefing has drawn attention maximally to Chaudhri despite Jones having disclaimed any issue with Chaudhri's decision in his complaint, his deposition, or his answer to the motion. Meanwhile, Amtrak has made effectively no argument on either of the two procedural components of his firing that Jones put directly at issue.

The second concern for this motion is that the asserted reason for Jones's dismissal is at least a little strange. To say about a group of people that they "should be shot" sounds probably violent. But when the person saying about a group of people that they "should be shot" is himself a member of that group, the likelihood that the statement is violent is far less. The Court need not make any further generalization than that, but in the specific circumstances here, as far as are ascertainable from the evidence provided, it would be reasonable to believe that Jones either (1) said "All the white hats should be shot" as an exclamation of displeasure by one of the concerned "white hats," or (2) he said "All the white hats should be shocked." Amtrak is under no obligation to keep employees who say violent things, even if the violence is hyperbole used to admonish (himself and) other supervisors for ongoing safety concerns. But it would not be unreasonable for

a jury to consider that the witnesses to Jones's statements were perhaps a bit too concerned and a bit too organized—in short, that Amtrak supervisors were looking for a pretext under which to fire Jones, and a hyperbolic slip provided the pretext on which they pounced.[8] *See Hamilton v. General Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009) ("When an employer waits for a legal, legitimate reason to fortuitously materialize, and then uses it to cover up his true, longstanding motivations for firing the employee, the employer's actions constitute the very definition of pretext." (cleaned up)).

Jones appears to have enough evidence of a *prima facie* case of employment discrimination and retaliation. Amtrak has centered its argument on an admittedly fair hearing officer rather than by addressing Jones's contentions head-on, a mismatch between its assertedly nondiscriminatory reason and the heart of the complaint. *See* Sandra F. Sperino, *Irreconcilable: McDonnell Douglas and Summary Judgment*, 102 North Carolina Law Review 459, 484–85 (2024). In any event, there is adequate evidence for a reasonable jury to believe that the determinative factor in Jones's firing was not the stated one. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). At the very least, Amtrak has not shown that any reasonable jury would believe it.

**III. <u>Conclusion</u>**

For the reasons in this memorandum, the Court will issue an order granting the requested extension of time, denying the motion to strike briefing, and denying the motion for summary judgment. The Court will also order a status report considering next steps for a settlement conference or trial.

[8] If a jury concluded that Jones's statement was not a threat for which Amtrak dismissed him, it would be in agreement with the Special Board of Adjustment, which did not identify substantial evidence to sustain the conclusion that he had made a threat.